NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0553n.06

**No. 17-1041**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>

GHASSAN KHALED and SONIA KHALED, individually and on behalf of S.K. and F.K., minors,

    Plaintiffs-Appellants,

v.

DEARBORN HEIGHTS POLICE DEPARTMENT, CITY OF DEARBORN HEIGHTS,

    Defendants-Appellees,

and

UNNAMED DEARBORN HEIGHTS POLICE OFFICERS,

    Defendants.

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

</td><td>

**FILED**
Oct 04, 2017
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

</td></tr>
</table>

BEFORE: SUHRHEINRICH, GRIFFIN, and KETHLEDGE, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiffs appeal the district court's order granting summary judgment in favor of defendants on plaintiffs' claims of racial and religious discrimination in violation of 42 U.S.C. § 1983. Plaintiffs argue summary judgment was improper because they presented sufficient evidence of discrimination by the police officer and municipal defendants to create a genuine issue of material fact for a jury to resolve. For the reasons set forth below, we disagree and affirm.

I.

This case arises out of a series of disagreements between neighbors that culminated in shouting matches, numerous calls to the local police, and, ultimately, this lawsuit. Plaintiff Ghassan Khaled lived with his wife, plaintiff Sonia Khaled, and Ghassan's children from a prior marriage, including minor daughters S.K. and F.K., who are also plaintiffs in this suit. The family rented a house next to Walter Solovey in Dearborn Heights, Michigan. The Khaleds and Solovey initially had a good relationship, with Ghassan's children referring to Solovey as "Uncle" and helping him with yardwork, and Solovey sometimes driving the children to school.

But these peaceful times would not last. In December 2014, one of Ghassan's daughters called him crying. She said that Solovey had grabbed two of her sisters by their arms, pulled them onto his property, told them to pick up a piece of trash that had flown onto his property from the Khaleds' yard, and then removed the girls' headscarves. Plaintiffs later alleged that Solovey also called the girls "f***ing Arab scarfies." Eventually, one of Ghassan's daughters called the police to report the incident.

Dearborn Heights police dispatch told Officer Michael Bacher that there was "neighbor trouble" at the Khaleds' residence and, upon arrival, Ghassan was waiting outside to meet him. Officer Bacher testified that Ghassan told him there had long been tension between his family and Solovey over trash that the Khaleds left between the two homes. Ghassan also told Officer Bacher that Solovey had complained about Ghassan's children being on Solovey's lawn. Officer Bacher testified that no one at the Khaleds' residence ever reported to him that Solovey had assaulted Ghassan's daughters or called them names. After speaking with the Khaleds, Officer Bacher attempted to speak with Solovey but no one answered when he knocked on Solovey's door. Ghassan claims that Officer Bacher told him that he would investigate the incident, said he

was sorry that the incident occurred, and promised to obtain a search warrant for Solovey's home.

Later that same afternoon, officers returned to the Khaleds' home in response to another verbal altercation between Ghassan and Solovey. At approximately 5:00 or 6:00 p.m., Ghassan saw Solovey outside in his yard. Ghassan testified that he asked Solovey if he had touched Ghassan's children, to which Solovey replied "eff this, you Arab," and called someone on his cellular phone. Shortly after that phone call, seven or eight police cars arrived at the Khaleds' home. According to Ghassan, one of the officers called him over, took down his information, and told Ghassan that he would be receiving a ticket for putting his trash out to the curb too early in the week. Ghassan protested that he was being ticketed for trash when his neighbor assaulted his daughters; according to Ghassan, the officer was uninterested in his version of events. The officer gave him the ticket and allegedly said, "[T]hat's how it is, you are Arab, you can learn how the law works." When Ghassan responded that this was "a racist issue," the officer allegedly responded, "[L]ook at this Arab, I don't want to hear your s***," before walking over to Solovey's property and laughing with the other officers and Solovey. Additionally, Ghassan claimed that he heard Solovey tell the officers that "[w]e need to kill all the Arabs here," at which the officers laughed. Plaintiffs never identified any of the officers allegedly present for these events.

Defendants give a very different version of events. A police report ascribed to Officer Christopher Suggs notes that at 5:40 p.m. on December 6, 2014, officers were dispatched to Solovey's address for "[n]eighborhood [t]rouble."[1] According to the report, Solovey told the

---

[1]Defendants attached a number of police reports to their motion for summary judgment. These reports show that Solovey and Ghassan had been at odds since at least July 12, 2014, resulting in the police being called on numerous occasions. These reports document grievances

officers that Ghassan yelled "Screw you, you f*****" at Solovey while he was standing in his yard. Solovey claimed he did not goad Ghassan in any way, but Ghassan continued to yell obscenities until Solovey went back inside his home. When the officers approached Ghassan to get his side of the story, he told them that Solovey had called his daughter a "b****," and that the two men have had an ongoing dispute. During these discussions, the officers "observed garb[a]ge and furniture that was covering the whole lower half of [Ghassan's] boulevard," so they issued him an ordinance violation. The police report from the incident and the deposition testimony of Officer Suggs reveal that he issued Ghassan the ordinance violation. Officer Suggs denied ever calling Ghassan an "Arab," or hearing any officers use the word or laughing at Ghassan's expense. Because the police had responded to a number of calls between Ghassan and Solovey, their homes were also placed on the "periodic" check list, which required police cars to occasionally drive by and keep watch on the neighbors.

Early the next day, Ghassan's brother brought Ghassan's daughters to the Dearborn Heights police station and asked to file a report regarding the daughters' alleged mistreatment by Solovey. The officer on duty, Sergeant Joanne Beedle Peer, declined to take this report, citing the department's general rule that officers were not allowed to take statements from minors without their parent or guardian present. The daughters never returned with a parent.

Plaintiffs sued defendants the City of Dearborn Heights, the Dearborn Heights Police Department, and unnamed Dearborn Heights police officers, alleging that plaintiffs were unlawfully targeted on the basis of their race (Arab-American) and religion (Muslim), contrary to 42 U.S.C. § 1983 and the Fourteenth Amendment. Defendants moved for summary judgment. In response, plaintiffs argued that genuine issues of material fact precluded summary judgment

from trespassing to abandoned vehicles to numerous instances of unspecified "neighborhood trouble."

and sought leave to file a second amended complaint naming Officer Bacher and Sergeant Beedle Peer as the previously unnamed officers.

The district court granted defendants' motion for summary judgment. After noting that plaintiffs conceded to the dismissal of their claims against the police department, the court held that amending the complaint to name Officer Bacher and Sergeant Beedle Peer as defendants would be futile because there was no evidence presented to support a § 1983 claim against either officer. Second, the court held that plaintiffs could not identify any basis for imposing liability on the city because plaintiffs had no evidentiary support for a constitutional violation by the individual defendants and could not establish any unlawful municipal policy or custom. Therefore, the district court granted defendants' motion for summary judgment in its entirety. Following the entry of a final judgment, plaintiffs now appeal here.

II.

We review a trial court's grant of summary judgment de novo. *Sumpter v. Wayne Cty.*, 868 F.3d 473, 480 (6th Cir. 2017). A district court's grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'To prevail, the nonmovant must show sufficient evidence to create a genuine issue of material fact,' which is to say, '[t]here must be evidence on which the jury could reasonably find for the [nonmovant].'" *Sumpter*, 868 F.3d at 480 (quoting *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001)). All evidence and inferences therefrom must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

We ordinarily review denial of a motion for leave to amend a complaint for an abuse of discretion. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003). But when a

district court denies a plaintiff's motion for leave to amend because it would have been futile, this basis for denial is a purely legal conclusion, which we review de novo. *Id.*

III.

Plaintiffs raise procedural and substantive challenges on appeal. First, plaintiffs claim the district court erred in granting summary judgment before they had an adequate opportunity to conduct discovery. Second, that the court should have granted plaintiffs leave to amend their complaint for a second time, and that summary judgment was inappropriate because plaintiffs presented sufficient evidence to create a genuine issue of material fact as to whether defendants' failure to provide police services was based on plaintiffs' race or religion. We address each argument in turn.

A.

Plaintiffs first claim that the trial court erred in granting summary judgment before they had an adequate opportunity to conduct discovery. Federal Rule of Civil Procedure 56(d) requires a nonmovant to show by affidavit or declaration that, "for specified reasons, it cannot present facts essential to justify its opposition." Then, "the court *may*: (1) defer considering the motion or deny it; (2) allow time . . . to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d) (emphasis added). That said, "if the appellant has not filed either a Rule 56[] affidavit or a motion that gives the district court a chance to rule on the need for additional discovery, this court will not normally address whether there was adequate time for discovery." *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196 (6th Cir. 1995). And even if the issue is properly raised in the lower court, "[a] district court generally does not abuse its discretion in denying a Rule 56[] discovery request if granting the desired discovery would not have affected its ruling." *Thornton v. Graphic Commc'ns Conference of Int'l Bhd. of Teamsters Supplemental*

-6-

*Ret. & Disability Fund*, 566 F.3d 597, 617 (6th Cir. 2009). Plaintiffs have never indicated—beyond mere vague statements that other unnamed police officers could be deposed—what additional discovery would uncover. On this basis alone, plaintiffs have failed to show that the trial court erred in denying their request for additional discovery. *La Quinta Corp. v. Heartland Props. L.L.C.*, 603 F.3d 327, 334 (6th Cir. 2010) ("It is not an abuse of discretion for the district court to deny the discovery request when the party makes only general and conclusory statements [ ] regarding the need for more discovery . . . .") (quoting *Ball v. Union Carbide Corp.*, 385 F.3d 713, 720 (6th Cir. 2006)).

Further, plaintiffs never requested additional time for discovery or any relief available under Rule 56 for additional discovery. Because plaintiffs failed to file either an affidavit or motion allowing the district court to address the issue, relief is precluded. *Plott*, 71 F.3d at 1196; *see also Scadden v. Werner*, 677 F. App'x 996, 1000 (6th Cir. 2017) (holding that a plaintiff's discussion of the continuing need for discovery in a response to a motion for summary judgment was insufficient because the "failure to comply with [Rule] 56(d) is reason enough to conclude that the district court did not abuse its discretion in granting the initial summary judgment motion"). We are thus left with the definite impression that "the desired discovery would not have affected [the district court's] ruling." *Thornton*, 566 F.3d at 617.

B.

Turning to the district court's ultimate determination granting defendants' summary judgment motion, plaintiffs claim that summary judgment was improper both to the individual officers—specifically Officer Bacher and Sergeant Beedle Peer—and the municipal defendants. We disagree.

*Police Officers.* Plaintiffs contend that the district court erred in denying plaintiffs leave to amend their complaint for a second time to add Officer Bacher and Sergeant Beedle Peer as named defendants, and in granting summary judgment to defendants. "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). But leave to amend may be denied when the amendment would be futile. *Yuhasz*, 341 F.3d at 569. The district court denied plaintiffs' motion to amend on futility grounds, ruling that plaintiffs had presented no evidence supporting the proposed amended complaint's § 1983 claims against either Officer Bacher or Sergeant Beedle Peer. Because the amendment issue and the substantive issue underlying the district court's Rule 56 determination overlap, we address them together.

The sole allegation against Officer Bacher in the proposed second amended complaint was that he failed to adequately investigate the Khaleds' allegations that Solovey assaulted Ghassan's daughters because all he did was knock on Solovey's door and leave when no one answered. According to plaintiffs, this failure to investigate further violated the Fourteenth Amendment's equal protection clause. However, as aptly noted by both defendants and the district court, there is no right to an adequate police investigation. *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007).

Plaintiffs seek to distinguish that principle, arguing that they are entitled to *some* investigation, adequate or otherwise. But plaintiffs' argument merely rewords that which this court has already rejected—by saying that this case required more from the officers, plaintiffs argue that the investigation as conducted was *inadequate*. For the claim against Officer Bacher to survive summary judgment, plaintiffs must create a genuine issue regarding whether they were targeted or intentionally treated differently on account of their race or religion. *Loesel v. City of*

*Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2016). The record is wholly bereft of evidence that Officer Bacher treated plaintiffs differently or worse than other residents, let alone intentionally. In fact, Ghassan testified that Officer Bacher was polite to him, and even expressed sympathy for Ghassan. Plaintiffs have presented no evidence that Officer Bacher discriminated against them on the basis of their race or religion.

Turning to Sergeant Beedle Peer, plaintiffs have similarly failed to meet their burden. The only preserved allegation against the Sergeant was that plaintiffs "believed [her] to be" the officer at the police station who refused to allow Ghassan's daughters to file a police report when they were accompanied by their uncle instead of a parent.[2] They allege that the Sergeant's refusal to accept Ghassan's daughters' report "for no articulated reason" constituted unlawful discrimination. But this is not so. Undisputed testimony confirms that Sergeant Beedle Peer told Ghassan's minor daughters, and their uncle, that they could not make a report without a parent or guardian present. She elaborated that this was a blanket department policy applicable to *all* minors.

Because plaintiffs could not meet their evidentiary burden, these claims must fail. While plaintiffs also allege that an officer called Ghassan an "Arab" and joined other officers in joking and laughing at anti-Arab-American sentiments, they have never named any of the officers involved. Without identifying a defendant to attach to these allegations, plaintiffs have failed to

---

[2]Plaintiffs also mention that "the same person" later came to their home and told them "in [a] demeaning tone that she was there to make sure that Plaintiffs' trash was taken out on the appropriate day (Sunday)." Regarding this second allegation, plaintiffs never explain how this encounter might support a § 1983 claim. The district court found this particular claim abandoned, and we agree.

oppose defendants' motion for summary judgment regarding all individual defendants. We therefore affirm the decision granting summary judgment in their favor.[3]

*Municipality.* Plaintiffs also raise claims against the city for violation of their constitutional rights.[4] While a plaintiff may seek damages against a municipality, those damages cannot be premised upon vicarious or *respondeat superior* liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–93 (1978). Instead, the plaintiff must create a genuine issue of material fact whether a municipal custom, policy, or practice resulted in the deprivation of the plaintiff's constitutional rights. *Id.* at 690–91.

In support of their *Monell* claim against the City of Dearborn Heights, plaintiffs allege that one can infer a discriminatory municipal policy or practice from the conduct of Officer Bacher and Sergeant Beedle Peer, as well as the actions attributed to an unknown officer. The ordinance violation they received for putting out their trash too early is their evidence of the city's discriminatory policies. But this is not enough.

First, as noted above, plaintiffs have failed to present any evidence supporting discrimination claims against either Bacher or Beedle Peer, precluding liability against the municipal defendants based on the officers' conduct. *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) ("If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983."). The alleged racist language and joking attributed to unnamed officers is also insufficient. Plaintiffs have never

---

[3]Because plaintiffs have presented no evidence supporting their § 1983 claims against Officer Bacher and Sergeant Beedle Peer, the district court also properly denied plaintiffs' request to amend their complaint to add these named individual defendants as futile.

[4]While the complaint names both the City of Dearborn Heights and the City of Dearborn Heights Police Department as defendants, plaintiffs have conceded, properly, that the police department is not a standalone entity, but rather an agent of the city and is therefore not a proper separate defendant for § 1983 purposes. See *Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007).

identified these individuals beyond underscoring that they were definitely police officers. Even assuming the joking and laughing at racially charged jokes was sufficient to violate plaintiffs' constitutional rights, it is insufficient to hold the city liable for this conduct. The Supreme Court has long held that "the wrongful conduct of a single officer without any policy-making authority did not establish municipal policy," and "decisions by subordinate employees did not necessarily reflect official policy." *Collins v. City of Harker Heights*, 503 U.S. 115, 121–22 (1992).

And the trash citation Ghassan received is also insufficient to support plaintiffs' § 1983 claim. Essentially, plaintiffs argue that the citation shows a practice of selective enforcement only against Arab-Americans, because officers testified that it was the only trash citation they could recall ever being issued. But this is insufficient to create a genuine issue on whether similarly situated persons outside of Ghassan's race or religion were treated differently. *See Haraji v. Huron Twp.*, 365 F.3d 501, 508 (6th Cir. 2004). In selective enforcement cases, "a plaintiff must demonstrate that a government actor had a bad reason for enforcing the law against her and not against a similarly situated party," or "that the action had no rational basis." *Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004). Plaintiffs have not produced evidence that non-Arab-American or non-Muslim residents have similarly violated the city's trash policy without citation, or that defendants had no basis to issue the citation Ghassan received. Because they have presented no evidence directly linking the municipal defendant to the alleged wrongful conduct of the individual officers, named or otherwise, they cannot establish *Monell* liability.

IV.

We affirm the judgment of the district court.