NOT RECOMMENDED FOR PUBLICATION

File Name: 26a0161n.06

No. 25-1537

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Apr 10, 2026

KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA, ex rel.
GREGORY LYNN and PAULETTE HAMILTON,

  Relators-Appellants,

v.

CITY OF DETROIT, MICHIGAN,

  Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

OPINION

Before: BOGGS, SILER, and KETHLEDGE, Circuit Judges.

BOGGS, Circuit Judge. This case is a qui tam action brought against the City of Detroit by relators Gregory Lynn and Paulette Hamilton on behalf of the United States, which declined to intervene pursuant to 31 U.S.C. § 3730(b)(4)(B). Plaintiffs filed suit under the False Claims Act, 31 U.S.C. § 3729(a)(1)(A), alleging that the City "knowingly present[ed], or cause[d] to be presented, a false or fraudulent claim for payment or approval" to the federal government, based on the City's annual Certifications and Assurances with regard to funding from the Federal Transit Administration. The district court granted summary judgment to the City, holding that the Certifications and Assurances were forward-looking promises and therefore could not support a claim for fraud.

On appeal, Plaintiffs argue that the district court abused its discretion in denying their motion to amend their complaint or, in the alternative, that their operative complaint actually stated two

claims, not just one. They also argue that the district court erred in its construction of the language of the Certifications and Assurances on which Plaintiffs base their fraud claim.

For the reasons below, we affirm the judgment of the district court in its entirety.

**BACKGROUND**

Relators Gregory Lynn and Paulette Hamilton are the principals of Enjoi Transportation, which previously provided paratransit services to the City of Detroit ("the City"), both directly and as a subcontractor to other companies, including Transdev Services, Inc. ("Transdev"). The City is a Michigan municipal corporation located in Wayne County, Michigan. Among other departments and divisions, the City operated a Department of Transportation ("DDOT"). As a grantee of the Federal Transit Administration ("FTA"), the City receives federal funds, and the City and its DDOT are responsible for managing the City's programs and for complying with federal statutory and administrative requirements. To receive federal funds from the FTA, the City signed annual Certifications and Assurances for 2015, 2016, 2017, 2018, 2019, 2020, 2021, and 2022. Certifications and Assurances state that the City "agrees to comply" with federal laws, regulations, and requirements, and to follow applicable federal guidance.

On April 16, 2015, the City issued a Request for Proposal ("RFP") for paratransit services. This contract, Contract 2916016, involved no funding from the federal government. In 2015, before Transdev responded to the RFP, Transdev employee Richard Alexander called DDOT Director Dan Dirks and discussed Martin Moore. Moore had previously worked with Dirks at another agency. Transdev had offered Moore a job with Transdev two years earlier. Transdev later hired Moore. After Transdev was awarded the contract, one of the Plaintiffs—Mr. Lynn—filed a complaint with the Detroit Board of Ethics alleging a conflict of interest because Dirks and Moore

had previously worked together. The Board of Ethics dismissed the complaint on September 15, 2017, finding that there was no unlawful conflict of interest.

In 2016, Transdev subcontracted Enjoi Transportation to provide vehicles and drivers on a paratransit contract with the City. *Enjoi Transportation, LLC v. City of Detroit*, No. 17-13052, 2019 WL 764237, at \*2 (E.D. Mich. February 21, 2019). In 2017, Transdev terminated the subcontract, citing Enjoi's failure to report accidents, failure to comply with vehicle inspections and drug-testing procedures, and failure to report that two of its drivers had failed drug tests. *Id.* at \*4. After the termination, Plaintiffs and Enjoi filed a 19-count federal lawsuit alleging racial discrimination against Transdev, the City, and Transdev and City employees. *See ibid.* The district court dismissed all claims. *Id.* at \*17.

Between July 15, 2016 and March 2018, Transdev forwarded On Time Performance reports to the City. The reports used a 40-minute pickup window to calculate On Time Performance. The FTA, however, requires its funding recipients to use 30-minute windows to schedule paratransit pickups. FTA Circular 4710.1. Plaintiffs allege that this 10-minute discrepancy in Transdev's performance reports made the City's annual certifications of compliance with FTA requirements fraudulent.

In December 2017, Plaintiffs filed this lawsuit under seal to permit the federal government to review the filing and intervene. In 2020, the federal government declined to participate. The case was unsealed in November 2020 and the City of Detroit was served in February 2021. On January 18, 2022, the court permitted the Plaintiffs to file the First Amended Complaint. Plaintiffs filed a Second Amended Complaint on May 20, 2022. Shortly thereafter, Plaintiffs filed a motion requesting permission to file a Third Amended Complaint, but did so under seal, which prevented the City from responding. Plaintiffs then requested a stay to obtain new counsel, and at a status

conference on November 17, 2022, the district court directed Plaintiffs to re-file their motion to amend unsealed within 30 days.

Instead of doing so, the Plaintiffs waited until January 9, 2023 and filed a motion to file a different Third Amended Complaint, which attempted to add five new counts and three new defendants. The district court denied the motion, stating that "[t]he court cannot allow the proposed changes. They are antithetical to what the court has previously expressed to be a permissible amendment." R. 86, PageID 3820.

Over the next fifteen months, both parties filed motions for summary judgment. Plaintiffs claimed that their operative complaint brought two counts, under 31 U.S.C. § 3729(a)(1)(A) and 31 U.S.C. § 3729(a)(1)(B). In its motion for summary judgment and its response brief to Plaintiffs' motion, the City argued that the operative Second Amended Complaint contained only one count, alleging violation of 31 U.S.C. § 3729(a)(1)(A) only. The trial court, in response, ordered both parties to file supplemental briefs focusing on this limited claim.

On August 8, 2024, Plaintiffs filed yet another motion to amend their complaint to allege a claim under 31 U.S.C. § 3729(a)(1)(B) and state an "implied" false-certification claim. The district court denied the motion. *United States ex rel. Lynn v. City of Detroit*, No. 17-14168, 2024 WL 3844859 (E.D. Mich. Aug. 15, 2024).

On September 27, 2024, the court granted the City's motion for summary judgment and denied the Plaintiffs' motion for summary judgment. *United States ex rel. Lynn v. City of Detroit*, No. 17-14168, 2024 WL 4340694, at *9–11 (E.D. Mich. Sept. 27, 2024). The district court held that the annual "Certifications and Assurances" could not constitute false-certification claims under the FCA because future promises or representations about future performance are insufficient to establish a fraud claim. *Id.* at *1.

Plaintiffs filed a motion for relief from judgment, which the district court denied on May 28, 2025. *United States ex rel. Lynn v. City of Detroit*, No. 17-14168, 2025 WL 1513954 (E.D. Mich. May 28, 2025).

This appeal followed.

## ANALYSIS

Plaintiffs claim (1) that the district court abused its discretion in denying their motion to amend their complaint, (2) that even without amendment, the district court erred in determining that the Plaintiffs' operative Second Amended Complaint did not include a second claim under 31 U.S.C. § 3729(a)(1)(B), and (3) that the district court erred in its construction of the Certifications and Assurances at issue as "forward-looking promises" that cannot support a fraud claim.

We address each argument in turn.

**A.  The district court did not abuse its discretion in denying Plaintiffs' motion to amend their complaint.**

We review a district court's denial of leave to amend for abuse of discretion. *Morse v. McWhorter*, 290 F.3d 795, 799–800 (6th Cir. 2002). Abuse of discretion may occur when a district court does not state the basis for its denial or fails to consider the competing interests of the parties and likelihood of prejudice to the opponent. *Ibid*. However, motions to amend after the deadline set by a court's scheduling order are permitted only if the Plaintiffs showed "good cause" for their failure to request the amendments earlier. *In re Nat'l Prescription Opiate Litigation,* 956 F.3d 838, 843 (6th Cir. 2020).

The district court clearly stated the basis for its denial, noting that "diligence is clearly lacking here, where 1) this is Plaintiffs' sixth proposed complaint in this case; 2) this motion was filed nearly seven years after this case was filed, long past the deadline for amendments to the

pleadings, after discovery closed, and after the opposing party had filed its motion for summary judgment; and 3) the motion was filed after Judge Cleland denied a prior motion to amend, concluding that the proposed amendments 'are the product of undue delay, [and] repeated failure to cure deficiencies by previous amendments' and if allowed would prejudice the City and further delay this protracted case." *United States ex rel. Lynn v. City of Detroit*, No. 17-14168, 2024 WL 3844859, at *3 (E.D. Mich. Aug. 15, 2024). The court additionally noted that allowing the Plaintiffs to amend at such a late stage "would undoubtedly prejudice Defendant[.]" *Ibid.*

The district court did not abuse its discretion in denying the motion to amend.

**B. The district court did not err in determining that the Plaintiffs' Second Amended Complaint stated only a single express false-certification claim under 31 U.S.C. § 3729(a)(1)(A).**

Plaintiffs next argue that their Second Amended Complaint, despite expressly articulating only one count under 31 U.S.C. § 3729(a)(1)(A), additionally includes a claim under 31 U.S.C. § 3729(a)(1)(B). Plaintiffs are correct that in paragraph 251 (on page 62 of their 70-page complaint) they claim that, based on the facts alleged in the complaint, "Defendant City knowingly made or used false records, statements, assurances, and certifications to induce the United States Government to approve its FTA and other funding requests." This is not "the exact statutory language" of § 3729(a)(1)(B), as Plaintiffs claim, but it does include some of the text of § 3729(a)(1)(B), which requires the City to have "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

To begin with, Plaintiffs consistently referred to the purported 31 U.S.C. § 3729(a)(1)(B) claim as "Count II" in their motion for summary judgment when their operative complaint contained only one count (expressly identified as under 31 U.S.C. § 3729(a)(1)(A)). Relators also expressly included 31 U.S.C. § 3729(a)(2), the previous statutory cite for (a)(1)(B), in Count I of

their original complaint, but deleted it from the operative complaint. *See* R. 1, p. 13; *U.S. ex rel. Sheldon v. Kettering Health Network,* 816 F.3d 399, 408 n.3 (6th Cir. 2016). Moreover, Plaintiffs attempted to file amended complaints *adding* a claim under 31 U.S.C. § 3729(a)(1)(B). But even if we do accept Plaintiffs' brief paraphrase, gesturing toward § 3729(a)(1)(B) does not suffice to state a claim. "Complaints alleging FCA violations must comply with Rule 9(b)'s requirement that fraud be pled with particularity because 'defendants accused of defrauding the federal government have the same protections as defendants sued for fraud in other contexts.'" *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) (quoting *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003)). And § 3729(a)(1)(B) requires a relator to plead a connection between the alleged fraud and an actual claim made to the government. *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 916 (6th Cir. 2017). "The alleged connection must be evident," otherwise "a cause of action under the FCA for fraud directed at private entities would threaten to transform the FCA into an all-purpose anti-fraud statute." *Ibid.* (quoting *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 672 (2008)). There are no facts in the record supporting a connection between the On Time Performance reports—presumably the alleged false records—and a false or fraudulent claim.[1] There is no evidence that the reports were ever sent to the FTA, that any information about them was provided to the FTA, or that any information in the reports was ever used to support a claim. Therefore, "relators fail to adequately plead a 31 U.S.C. § 3729(a)(1)(B) claim because they rely on a too-attenuated chain connecting alleged false statements to the submission of claims." *Ibanez,* 874 F.3d at 916.

---

[1] Because the complaint only adverts briefly to some of the text of § 3729(a)(1)(B), it's not clear which portions of their factual allegations are intended to apply to that statutory section. But the On Time Performance reports seem to be the only purported "false records," aside from the Certifications and Assurances, which are covered by the § 3729(a)(1)(A) claim.

The district court did not err in determining that Plaintiffs stated only one claim, an express false-certification claim under 31 U.S.C. § 3729(a)(1)(A).

**C. The district court did not err in determining that the Certifications and Assurances at issue were "forward-looking promises" that cannot support a fraud claim.**

Having found that Plaintiffs brought only a single express false-certification claim under 31 U.S.C. § 3729(a)(1)(A), we now review whether the City was entitled to summary judgment on this claim. This court reviews a district court's grant of summary judgment de novo. *Rose v. State Farm Fire & Cas. Co.,* 766 F.3d 532, 535 (6th Cir. 2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence in the light most favorable to and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue at the summary-judgment stage is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986).

Under a "false certification" theory, the claimant knowingly falsely certifies that it has complied with a statute or regulation the compliance with which is a condition for Government payment. *United States ex rel. Hobbs v. Medquest Assocs., Inc.,* 711 F.3d 707, 714 (6th Cir. 2013). In an express false-certification case, the defendant is alleged to have signed or otherwise certified to compliance with some law or regulation on the face of the claim submitted. *Ibid.* Plaintiffs' claim, therefore, is that the yearly Certifications and Assurances signed by the City constitute an express false certification.

The text of the 2016 annual Certifications and Assurances reads:

Thus, it *agrees to comply* with all federal laws, regulations, and requirements, follow applicable federal guidance, and comply with the Certifications and Assurances as

indicated on the foregoing page applicable to each application its Authorized Representative makes to the Federal Transit Administration (FTA) in federal fiscal year 2016[.]

R. 118-2, PageID 6362 (emphasis added).

Other relevant Certifications and Assurances use identical language. The district court held that "agrees to comply" is a promise, not a past or existing fact. And future promises are contractual and do not constitute fraud. *Cook v. Little Caesar Enters.,* 210 F.3d 653, 658 (6th Cir. 2000); *Hi-Way Motor Co. v. International Harvester Co.,* 398 Mich. 330, 336 (1976). In *United States ex rel. Hobbs v. Medquest Assocs., Inc.,* this court held that an application promising that a center would "abide by the Medicare laws, regulations and program instructions" could not support an express false-certification claim, because "[t]he falsity of a claim is determined at the time of submission." 711 F.3d at 714–15. Other courts have held similarly. *See, e.g., United States ex rel. Kennedy v. Aventis Pharms., Inc.* 610 F. Supp. 2d 938, 946 (N.D. Ill. 2009) (dismissing an express false-certification claim that only alleged that defendants promised they would comply, not that they had).

Plaintiffs argue that a Ninth Circuit case, *Hendow v. University of Phoenix*, compels a different conclusion. 461 F.3d 1166, 1175 (9th Cir. 2006). It does not. Neither this court nor the district court is bound by an out-of-circuit opinion. Moreover, *Hendow* does not conflict with *Hobbs*, agreeing that "false claims must in fact be 'false when made'." *Id.* at 1172. Plaintiffs quote analysis from *Hendow* not about whether a future promise can support a fraud claim, but rather about whether a statement is a condition of participation or of payment. *Id.* at 1176.

Consequently, we follow our own precedent from *Hobbs* and determine that if the Certifications and Assurances are forward-looking promises, they cannot be the basis of an express-certification claim for fraud.

We review the district court's construction of a contract de novo. *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009). But Plaintiffs do not seem to dispute the meaning of the plain language: that "agrees to comply" represents a future promise. Instead, Plaintiffs make three arguments: that an individual section of the Certifications from 2019 onwards uses present-tense language, that the Program Fraud Civil Remedies Act of 1986, 31 U.S.C. § 3801, applies to submissions made to the FTA, and that the certifications were signed at various times during the fiscal year. None are availing.

First, Plaintiffs argue that, beginning in 2019, one section of the Certifications and Assurances included language that the City "certifies that its procurement system *complies* with (a) U.S. DOT regulations . . .; (b) Federal laws, regulations, and requirements applicable to FTA procurements; and (c) the latest edition of FTA circular 4220.1 and other applicable Federal guidance." R.118-3 PageID 6382–83 (emphasis added). But all the facts that Plaintiffs allege to demonstrate noncompliance predate 2019. Their claims concern the 2016 procurement process for a contract not funded by the FTA and reports that were last issued in March 2018, neither of which—even if they constituted a breach in compliance—were still in force by 2019. Consequently, even if we credit the present-tense 2019 language, it is irrelevant to the claim because the Plaintiffs do not allege facts that would constitute a present-tense violation during the relevant periods.

Second, the contract language noting that the Program Fraud Civil Remedies Act applies to the Certifications and Assurances has no impact on the meaning of the contract. The PFCRA has no bearing on any of the allegations in this case; it only applies when fraud claims are $150,000 or less and is only enforced through administrative proceedings. *See Roberts v. Shinseki*, 647 F.3d 1334, 1340 (Fed. Cir. 2011). And "[t]he PFCRA prohibits the same conduct as the FCA[.]"

*Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 134 n.11 (2003). The fact that the PFCRA itself uses present-tense language does not transmute the text of the certification that the City signed.

Third, the time at which the City signed the contract is irrelevant to the meaning of the contract. The plain text states that the City "agrees to comply" with federal law "applicable to each application its Authorized Representative *makes* to the Federal Transit Administration (FTA) in federal fiscal year 2016." This does not assert past compliance, only future behavior. And given that the relevant certifications only constitute future promises, they cannot sustain a fraud claim.

Plaintiffs next attempt to make a promissory-fraud argument. The "promissory fraud" exception, recognized by some courts, allows an express false-certification claim to proceed regarding a future promise *only* if the plaintiff can establish that the defendant had no intention of complying in the future at the time that the certification was made. *See, e.g., United States ex rel. Lamers v. City of Green Bay,* 998 F. Supp. 971, 987 (E.D. Wisc. 1998).

But here, the Plaintiffs did not allege promissory fraud in their Second Amended Complaint. And fraud claims must "be pled with particularity[.]" *Chesbrough*, 655 F.3d at 466. Plaintiffs' complaint does not allege that the City had no intention of complying with the law when the certifications were signed, so they have failed to state a claim for promissory fraud. Nor have the Plaintiffs pointed toward any facts unearthed in discovery showing promissory fraud. Moreover, even if Plaintiffs had stated such a claim, the Sixth Circuit has never explicitly endorsed the promissory-fraud exception in the FCA context. *See United States ex rel. Griffith v. Conn*, 117 F. Supp. 3d 961, 977 (E.D. Ky. 2015) (noting that "the Sixth Circuit has not yet weighed in on the viability of the promissory fraud theory in the FCA context" but "courts have recognized significant limits on this theory of FCA liability.").

The district court correctly held that the Certifications and Assurances were forward-looking promises and were not subject to FCA liability. Because the Certifications are insufficient to support an express false-certification claim under the FCA, the City is entitled to summary judgment.

## CONCLUSION

For the reasons above, the judgment of the district court is **AFFIRMED**.